UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRUSTEES OF THE NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS PENSION FUND, WELFARE FUND, ANNUITY FUND, and APPRENTICESHIP, JOURNEYMAN RETRAINING, EDUCATIONAL AND INDUSTRY FUND, TRUSTEES OF THE NEW YORK CITY CARPENTERS RELIEF AND CHARITY FUND, THE NEW YORK CITY AND VICINITY CARPENTERS LABOR-MANAGEMENT CORPORATION, and the NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS,<br><br>Petitioners,<br><br>-against-<br><br>EXCEL INSTALLATIONS, LLC,<br><br>Respondent. | 18 CV _____<br><br>**PETITION TO CONFIRM AN <u>ARBITRATION AWARD</u>** |

Petitioners, Trustees of the New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educational and Industry Fund, Trustees of the New York City Carpenters Relief and Charity Fund, the New York City and Vicinity Carpenters Labor Management Corporation, and the New York City District Council of Carpenters ("Petitioners" and/or the "Funds"), by and through their attorneys, Virginia & Ambinder, LLP, as and for their Petition to Confirm an Arbitration Award, respectfully allege as follows:

## NATURE OF THE ACTION

1. This is an action under section 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1132(a)(3); section 301 of the Labor Management Relations Act of 1947 ("LMRA"), as amended, 29 U.S.C. § 185; and/or section 9 of the Federal Arbitration Act, 9 U.S.C § 9, to confirm and enforce an Arbitrator's Award rendered

pursuant to a collective bargaining agreement involving the New York City District Council of Carpenters and Excel Installations, LLC ("Respondent").

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367, and 29 U.S.C. §§ 185 and 1132(e)(1).

3. Venue is proper in this Court pursuant to 29 U.S.C. § 1132(e)(2) because the ERISA Funds (as defined below) are administered in this district.

## THE PARTIES

4. Petitioners Trustees of the New York City District Council of Carpenters Pension, Welfare, Annuity, Apprenticeship, Journeyman Retraining and Educational and Industry Funds (the "ERISA Funds") are employer and employee trustees of multiemployer labor-management trust funds organized and operated in accordance with ERISA. The Trustees are fiduciaries of the ERISA Funds within the meaning of section 3(21) of ERISA, 29 U.S.C. § 1002(21). The ERISA Funds maintain their principal place of business at 395 Hudson Street, New York, New York 10014.

5. Petitioners Trustees of the New York City District Council of Carpenters Relief and Charity Fund (the "Charity Fund") are Trustees of a charitable organization established under section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3). The Charity Fund maintains its principal place of business at 395 Hudson Street, New York, New York 10014.

6. Petitioner New York City and Vicinity Carpenters Labor-Management Corporation (together, with the ERISA Funds and the Charity Fund, as the "Funds") is a New York not-for-profit corporation.

7. Petitioner Union is a labor organization that represents employees in an industry affecting commerce within the meaning of section 501 of the LMRA, 29 U.S.C. § 142, and is the certified bargaining representative for certain employees of the Respondent.

8. Respondent is a limited liability company incorporated under the laws of the State of Connecticut. At relevant times, Respondent was an employer within the meaning of section 3(5) of ERISA, 29 U.S.C. § 1002(5), and was an employer in an industry affecting commerce within the meaning of section 501 of the LMRA, 29 U.S.C. § 142. Respondent maintains its principal place of business at 40 Mountain Road, Ridgefield, Connecticut, 06877.

## THE ARBITRATION AWARD

9. On or about January 23, 2015, Respondent joined the Building Contractors Association, Inc. (the "Association"), and the Association transmitted a notice of the same to the Union. A copy of the notice is annexed hereto as **Exhibit A**.

10. At all relevant times, Respondent was a member of the Association. Association membership lists for the years 2015 and 2016 are annexed hereto as **Exhibit B** and **Exhibit C**, respectively.

11. As a member of the Association, Respondent was bound to the collective bargaining agreement between the Association and the Union for the period July 1, 2011 through June 30, 2015 (the "CBA"). A copy of the CBA is annexed hereto as **Exhibit D**.

12. The CBA provides that "[t]he duration of this Agreement shall continue until June 30, 2015 and shall be renewed automatically for one year intervals thereafter unless notice . . . has been provided . . . before the contract expiration that such party seeks to negotiate a new contract or modify or amend this Agreement through negotiations." Exhibit D, Article XX.

13. In June 2015, the Association and the Union entered into a Memorandum of Understanding (the "2015 MOU") whereby the terms of the CBA were ratified and extended for an additional one-year period ending June 30, 2016, subject to certain negotiated amendments to the CBA's terms. A copy of the 2015 MOU is annexed hereto as **Exhibit E**.

14. Subsequently, in June 2016, the Association and the Union entered into another Memorandum of Understanding (the "2016 MOU") whereby the terms of the CBA were ratified and extended for an additional one-year period ending June 30, 2017, subject to certain negotiated amendments to the CBA's terms. A copy of the 2016 MOU is annexed hereto as **Exhibit F**.

15. The CBA, in its original form and as amended by the 2015 MOU and 2016 MOU, requires Respondent to remit contributions to the Funds for every hour worked by its employees within the trade and geographical jurisdiction of the Union. Exhibit D, Article XVI, Section 1.

16. The CBA, in its original form and as amended by the 2015 MOU and 2016 MOU, requires Respondent to furnish its books and payroll records when requested by the Funds for the purpose of conducting an audit to ensure compliance with required benefit fund contributions. Exhibit D, Article XVI, Section 1.

17. The CBA, in its original form and as amended by the 2015 MOU and 2016 MOU, provides that "[s]hould any dispute or disagreement arise between the parties hereto . . . concerning any claim arising from payments to the Fund of principal and/or interest which is allegedly due, either party may seek arbitration of the dispute before the impartial arbitrator . . . ." Exhibit D, Article XVI, Section 7.

18. The CBA, in its original form and as amended by the 2015 MOU and 2016 MOU, binds employers to the Funds' Collection Policy. Exhibit D**,** Article XVI, Section 3. A copy of the Collection Policy is attached hereto as **Exhibit G**.

19. The Collection Policy provides that in the event that an employer refuses to comply with the CBA's audit procedures, the Funds "shall determine the estimated amount of the employer's delinquent contributions based on the assumption that the employer's weekly hours subject to contributions for each week of the requested audit period are the highest number of average hours reported per week for any period of four consecutive weeks during the audit period. A determination under this paragraph shall constitute presumptive evidence of delinquency." Exhibit G, Section IV(12).

20. The CBA, in its original form and as amended by the 2015 MOU and 2016 MOU, also provides that:

> In the event that formal proceedings are instituted before a court of competent jurisdiction by the trustees of a Benefit Fund or Funds to collect delinquent contributions to such Fund(s), and if such court renders a judgment in favor of such Fund(s), the Employer shall pay to such Fund(s), in accordance with the judgment of the court, and in lieu of any other liquidated damages, costs, attorney's fees and/or interest, the following:
>
> (a) the unpaid contributions; plus
> (b) interest on the unpaid contributions determined at the prime rate of Citibank plus two (2.0%) percent; plus
> (c) an amount equal to the greater of --
>    (1) the amount of the interest charges on the unpaid contributions as determined in (b) above, or
>    (2) liquidated damages of twenty (20%) percent of the amount of the unpaid contributions; plus
> (d) reasonable attorney's fees and costs of the action; and
> (e) such other legal or equitable relief as the court deems appropriate.

Exhibit D, Article XVI, Section 6(a).

21. The Funds attempted to conduct an audit of Respondent's books and records for the period January 26, 2015 through October 18, 2016 in order to determine whether Respondent had remitted the proper amount of contributions to the Funds. When Respondent refused to submit

to an audit, the Funds conducted an estimated audit pursuant to the Collection Policy, which revealed that Respondent failed to remit contributions in the principal amount of $120,870.24.

22. Pursuant to the CBA's arbitration clause, Petitioners initiated arbitration before the designated arbitrator, Roger E. Maher. Said arbitration was noticed by having the Arbitrator's Notice of Hearing sent to Respondent by regular and certified mail. A copy of the Notice of Hearing is annexed hereto as **Exhibit H**.

23. Thereafter, the arbitrator held a hearing and rendered his award, in writing, dated February 3, 2017, determining said dispute (the "Award"). A copy of the Award is annexed hereto as **Exhibit I**.

24. The arbitrator found that Respondent violated the CBA when it failed to remit all required contributions to the Funds, and ordered Respondent to pay the Funds the sum of $155,266.44, consisting of an estimated principal sum of delinquent contributions of $120,870.24, total interest of $7,822.15, liquidated damages of $24,174.05, court costs of $400.00, attorneys' fees of $1,500.00, and the arbitrator's fee of $500.00. *See* Exhibit I.

25. The arbitrator also found that interest of 5.75% will accrue on the principal deficiency of the Award from the date of the issuance of the Award. *See* Exhibit I.

26. On March 27, 2017, Petitioners filed an action in federal court to confirm the Arbitration Award styled *Trustees of the New York City District Council of Carpenters Pension Fund et al. v. Excel Installations, LLC*, 17-cv-2185 (S.D.N.Y.) (the "Lawsuit").

27. On June 29, 2017, the Parties entered into a tolling agreement ("Tolling Agreement"), whereby Respondent agreed to submit to an audit in exchange for dismissing the Lawsuit without prejudice, with the option to re-file a petition should Respondent fail to submit to an audit. A copy of the Tolling Agreement is annexed hereto as **Exhibit J**.

28.     Pursuant to the Tolling Agreement, Respondent submitted a payment of $4,656.20, representing attorneys' fees incurred in the arbitration proceeding of $1,500, the arbitrator's fee of $500, court costs (awarded in the arbitration proceeding with respect to the impending action to confirm the award) of $400, and subsequent attorneys' fees and costs incurred in the prior-filed petition to confirm of $2,256.20.

29.     As a result of these payments, the Award can be properly reduced to $152,866.44.[1]

30.     On August 7, 2017, Petitioners filed a voluntarily dismissal of the Lawsuit and this Court ordered that the Lawsuit be dismissed in its entirety without prejudice.

31.     Subsequently, in violation of the Tolling Agreement, Respondent failed to submit all of its books and records as requested by the Funds' auditors.

32.     As of the date of this Petition, Respondent has failed to submit to an audit.

33.     Petitioners are entitled to the reasonable attorneys' fees and costs expended in this matter pursuant to both Article XVI, Section 6(a) of the CBA and Section 502(g) of ERISA, 29 U.S.C. § 1132(g).

34.     The Collection Policy further states that "[a]ttorneys' fees shall be assessed against a delinquent employer, at the same hourly rate charged to the Funds for such services . . . for all time spent by Collection Counsel in collection efforts . . . ." Exhibit G, Section V(6).

35.     Copies of V&A's contemporaneous time records, reflecting all time spent and all activities performed in the prosecution of this petition to confirm by its attorneys and staff, are annexed hereto as **Exhibit K**.[2]

---

[1] This amount is the total amount found due in the Award minus the following elements of the Award which were subsequently paid: court costs of $400; attorneys' fees of $1,500; and the arbitrator's fee of $500.

[2] This exhibit does not include any of the attorneys' fees and costs Respondent paid pursuant to the Tolling Agreement.

36. I, Todd Dickerson ("TD" in the accompanying billing records), am a 2013 graduate of the University of Illinois College of Law.  In November 2015, I joined V&A as an associate.  In late May of 2016, I was promoted to the position of "Of Counsel."  I have regularly served as lead counsel for multiemployer employee benefit plans in ERISA litigation since joining V&A.  Before joining V&A, I regularly served as lead counsel in labor and employment lawsuits in both state and federal court.  During my time as "Of Counsel," V&A billed my time at a rate of $350 per hour.  *See* Exhibit K.

37. Paige Davis ("PD" in the accompanying billing records), is a 2016 graduate of Indiana University Maurer School of Law and an associate at V&A.  Ms. Davis' primary practice area is the representation of multiemployer employee benefit plans in ERISA litigation.  V&A billed Ms. Davis' time at a rate of $275 per hour for work performed in connection with this action.  *See* Exhibit K.

38. V&A billed the legal assistants' time at a rate of $120 per hour for work performed in connection with this action.  *See* Exhibit K.

39. All of the above-referenced rates are the result of negotiations between V&A and the Funds regarding the proper hourly rates to compensate V&A's attorneys and legal assistants for their services.

40. V&A's total billings in re-filing this Petition amount to $2,592.50 reflecting 9.1 hours of work. Exhibit K.

41. In addition, V&A will advance $475 in service fees and filing fees in connection with this matter.

42. A Proposed Judgment is attached hereto as **Exhibit L.**

**WHEREFORE,** Petitioners respectfully request that this Court:

(1) Confirm the Award in all respects;

(2) Award judgment in favor of the Petitioners and against Respondent in the amount of $152,866.44, representing the remaining unpaid balance of the Award;

(3) Award interest from the date of the Award through the date of judgment with interest to accrue at the annual rate of 5.75% pursuant to the Award;

(4) Award judgment in favor of the Petitioners and against Respondent in the amount of $2,592.50 in attorneys' fees and $475 in costs arising out of this petition;

(5) Award post-judgment interest at the statutory rate; and

(6) Award Petitioners such other and further relief as is just and proper.

Dated: New York, New York  
       February 9, 2018

Respectfully submitted,

**VIRGINIA & AMBINDER, LLP**

By:      /s/       
Todd Dickerson, Esq.  
40 Broad Street, 7th Floor  
New York, New York 10004  
Telephone: (212) 943-9080  
Fax: (212) 943-9082  
*Attorneys for Petitioners*